## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRY BEERS, Administrator of The ESTATE OF SEAN R. BEERS, Deceased, | No. 4:22-CV-01101 |
| | (Chief Judge Brann) |
| Plaintiff, | |
| v. | |
| NORTHUMBERLAND COUNTY, BRUCE KOVACH, Individually and In his Official Capacity, SAMUEL J. SCHICCATANO, JOSEPH M. KLEBON, KYMBERLEY L. BEST, JAMES HOSKIN and MARY DOE, | |
| Defendants. | |

## MEMORANDUM OPINION

### MARCH 10, 2023

Plaintiff Sherry Beers sues Northumberland County, Pennsylvania, the County Commissioners, and two Northumberland County Jail officers in this civil rights action arising from the tragic suicide of her son, Sean Beers, while he was detained at the County Jail. After being arrested and transported to the County Jail, Sean was apparently not screened for mental health issues. He was left in a cell, unmonitored and was eventually found there, unresponsive. He was then pronounced dead at a local hospital.

Beers alleges that Defendants violated Sean's constitutional rights by failing to screen and monitor him. Defendants now move to dismiss Beers' Complaint for

failing to state a claim and because they are immune to her claims. The Court agrees

and grants their motion. But it will dismiss Beers' claims without prejudice.

## I.  BACKGROUND

### A.  Underlying Facts

Sean Beers was arrested in May 2021 and placed in the Northumberland

County Jail pending further proceedings.[1] At the time, the County Jail was

experiencing staffing issues.[2] It is unclear whether Sean was screened for mental

health issues or suicide risk, but he "indicated to Defendants' representatives that he

was having suicidal thoughts."[3] While in custody, he was not observed for an

extended period of time, in violation of prison policies that required correctional

officers to periodically check on inmates.[4] He was later found unresponsive in his

cell and transported to a local hospital, where he was pronounced dead.[5]

### B.  Procedural History

Beers, as administratrix of Sean Beers' estate, sues Northumberland County;

Bruce Kovach, the warden of the County Jail; Samuel J. Schiccatano, Joseph M.

Klebon, Kymberley L. Best, , all current elected County commissioners; Mary Doe,

an unidentified correctional officer who was responsible for monitoring Sean while

---

[1]   Compl., Doc. 1 ¶ 15.
[2]   *Id.* ¶ 23.
[3]   *Id.* ¶¶ 17, 22- 25, 28.
[4]   *See id.* ¶¶ 24, 27.
[5]   *Id.* ¶¶ 25, 26.

he was in custody; and James Hoskin.[6] The Court will refer to Defendants Kovach, Schiccatano, Klebon, Best, and Hoskin as the "Supervisor Defendants."

In her complaint, Beers brings four causes of action: (1) a 42 U.S.C. § 1983 claim that all Defendants violated Sean's due process rights under the Fourteenth Amendment (Count I); (2) a claim under *Monell v. Department of Social Services of the City of New York* that the County violated Sean's Fourteenth Amendment rights by failing to properly staff the County Jail and/or train the County Jail's employees (Count II); (3) a wrongful death action (Count III); and a survival action (Count IV).[7]

## II.   LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v. Twombly*[8] and *Ashcroft v. Iqbal*,[9] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing

---

[6]   Compl., Doc. 1 ¶¶ 5-11, 29-30. The Complaint identifies Hoskin as County commissioner. That appears to an error, but it does not affect the Court's analysis.
[7]   Compl., Doc. 1 ¶¶ 40-61.
[8]   550 U.S. 544 (2007).
[9]   556 U.S. 662 (2009).
[10]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[11]

## III.   ANALYSIS

The Court begins with Beers' constitutional claims and Defendants' immunity defense. Beers agrees with Defendants "that if a [c]onstitutional [v]iolation does not exist, [he] cannot proceed on causes of action based upon the Pennsylvania Wrongful Death and Survival Statutes," contained in Counts III and IV, respectively.[12] Therefore, the Court will consider her constitutional claims first.

Beers sues the Supervisor Defendants in their individual capacities for violating her son's constitutional rights. Defendants argue that Beers fails to sufficiently allege a constitutional violation, therefore entitling them to qualified immunity to her individual-capacity section 1983 claim.[13]

Under the qualified immunity doctrine, "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

[11]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[12]   Defs.' Opp. Br., Doc. 9 at 10

[13]   *Id.* at 4-10.

which a reasonable person should have known."[14] An official is therefore immune unless a plaintiff's allegations, viewed in the most favorable light, establish that: (1) the official violated the plaintiff's constitutional rights and (2) those rights were clearly established at the time of the violation.[15] As stated above, Defendants argue that Beers has not satisfactorily alleged a constitutional violation.[16]

Beers also brings a *Monell* claim, alleging that the County maintained an unconstitutional policy of understaffing the County Jail and failing to train its employees.[17] Defendants argue that her *Monell* allegations fail to state a claim.[18]

### A.    Standard for Suicide Vulnerability Claims

As a pretrial detainee, Beers' rights are governed by the Fourteenth Amendment rather than the Eighth Amendment, which only applies once an individual has been convicted of an offense.[19] Our Court of Appeals has "concluded that the Due Process Clause of the Fourteenth Amendment provides pretrial detainees at least as much protection for personal security as the level guaranteed to prisoners by the Eighth Amendment."[20]

---

[14]  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[15]  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[16]  Although the parties do not address the second prong, there can be no dispute that pretrial detainees suffering from suicidal tendencies have the right to not be treated with deliberate or reckless indifference on the part of government officials in custodial institutions—the decisions establishing such a right are legion. *See, e.g.*, *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 669 (3d Cir. 1988) ("*Colburn* I"); *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005); *Palakovic v. Wetzel*, 854 F.3d 209, 218 (3d Cir. 2017).

[17]  Compl., Doc. 1 ¶¶ 48-53.

[18]  Defs.' Opp. Br., Doc. 9 at 11-17.

[19]  *See Palakovic*, 854 F.3d at 223.

[20]  *Palakovic*, 854 F.3d at 222 (quoting *Colburn* I, 838 F.2d at 668)

5

Therefore, "whether a pre-trial detainee or a convicted prisoner, a plaintiff must show:" (1) "that the individual had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted; (2) "that the prison official knew or should have known of the individual's particular vulnerability"; and (3) "that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability."[21]

In addition, the plaintiff must also establish that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."[22] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[23] "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."[24]

### B.   Beers' Individual-Capacity Claims Fail to Sufficiently to Allege Defendants' Personal Involvement or an Unconstitutional policy

Defendants first argue that Beers' Complaint does not give them fair notice of the claims against them because it does not identify a nexus between Sean's

---

[21]  *Id.* at 223-24.

[22]  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)).

[23]  *Id.*

[24]  *Id.*

suicide and Defendants, failing to meet Rule 8's pleading standard.[25] As established above, in the prison-suicide context, a plaintiff must show some awareness of the detainee's vulnerability to suicide on the prison officials' part. But "[i]t is not necessary for the custodian to have a subjective appreciation of the detainee's particular vulnerability."[26] "'[R]eckless or deliberate indifference to that risk' only demands 'something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide.'"[27]

### 1. Beers Cannot Establish the Individual Defendants' Deliberate Indifference Because She Has Not Established that They Knew About Sean's Suicidal Proclivity

Beers' Complaint alleges that Sean "indicated to Defendants' representatives that he was having suicidal thoughts."[28] "Custodians have been found to 'know' of a particular vulnerability to suicide when they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities"[29]

But the Complaint does not identify those "representatives" or suggest that Defendants themselves are those representatives. Presumably, the representatives are other employees of the County Jail. Beers names one unidentified correctional officer, Mary Doe, as a Defendant but does not allege that she was the

---

[25]   Defs.' MTD Br., Doc. 9 at 6-8.
[26]   *Palakovic¸* 854 F.3d at 231 (citing *Woloszyn*, 396 F.3d at 320).
[27]   *Id.* (quoting *Woloszyn*, 396 F.3d at 320).
[28]   Compl., Doc. 1 ¶ 28.
[29]   *Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1025 (3d Cir. 1991) ("*Colburn* II").

"representative" to whom Sean indicated his suicidal ideation. The lack of any allegations as to Doe's knowledge of Sean's vulnerabilities is fatal to Beers' section 1983 claim against Doe. To the extent she alleges a similar individual-capacity claim against the Supervisor Defendants, it fails as well for the same reason.[30]

But Beers also alleges that the Supervisor Defendants knew "that the [County Jail] was understaffed and a need existed to hire more Correctional Officers."[31] That appears to be a supervisory liability claim.[32] To establish supervisory liability, a plaintiff must show that the supervisor "knew or w[as] aware of and disregarded an excessive risk to the plaintiff['s] health or safety" or that the risk was "obvious."[33] That test is known as the *Farmer* test, named for *Farmer v. Brennan*, the Supreme Court decision that first announced it.[34] A plaintiff may also show that a supervisor is indirectly liable by enacting policies or customs that caused the constitutional violation under the *Sample* test, named for *Sample v. Diecks*.[35] Beers appears to pursue both theories, but her allegations are insufficient to support either.

As for the *Farmer* test, "a plaintiff must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety,

---

[30]   If Hoskin is a correctional officer, then the above analysis also applies to him.

[31]   Beers Opp. Br., Doc. 14 at 6.

[32]   *See Palakovic*, 854 F.3d at 233 ("[A] plaintiff may state an Eighth Amendment claim against a supervisor based on policies or practices where the plaintiff alleges that the supervisors "knew or were aware of and disregarded an excessive risk to the [plaintiff's] health or safety." (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001))).

[33]   *Id.* at 225, 225 n.17 (quoting *Beers-Capitol*, 256 F.3d at 135).

[34]   *Id.* (citing 511 U.S. 825 (1994)).

[35]   *Id.* (citing 885 F.2d 1099, 1118 (3d Cir. 1989). The *Palakovic* court questioned the *Sample* test's viability in light of *Iqbal*, but did not decide the question. *See id.* at 225 n.17.

which can be established by showing that the risk was obvious" or through showing that a supervisor knows that a subordinate is violating the plaintiff's rights.[36] That standard is the "deliberate-indifference" standard. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[37]

As explained above, Beers has not alleged that any of the Supervisor Defendants knew of Sean's vulnerability to suicide. Nor has she established that the risk of his suicide was obvious. She has not even sufficiently alleged that the Supervisor Defendants knew that Sean was detained in the County Jail. Without those facts, Beers cannot show that the Supervisor Defendants were deliberately indifferent.[38]

---

[36]  *Mullin v. Balicki*, 2019 WL 2315044, at *7 (D.N.J. May 31, 2019) (Wolfson, C.J.) (citing *Beers-Capitol*, 256 F.3d at 135. As the Supreme Court explained by way of example in *City of Canton, Ohio v. Harris*, "the need to train officers in the constitutional limitations on the use of deadly force" is "so obvious" when a city arms its officers with firearms and expects them to apprehend fleeing felons. 489 U.S. 378, 390 n.10 (1989). In such a case, "failure to provide such training could provide a basis for single-incident municipal liability." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014).

[37]  *Thomas*, 749 F.3d at 223 (quoting *Brown*, 520 U.S. at 410) (internal quotation marks omitted).

[38]  *See Mullin*, 2019 WL 2315044, at *7 (dismissing the plaintiff's complaint where "he vaguely and conclusorily alleged that [the supervisors] were on duty while [other defendants] failed to perform their monitoring duties, and, therefore, had the required knowledge," because "there [was] no indication that [the supervisors] had any actual awareness of this alleged constitutional violation.").

### 2.   Beers Fails to Allege a Policy or Custom that Led to the Constitutional Violation

To make out a successful supervisory claim under the *Sample* test, a plaintiff must allege that: (1) "the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation"; (2) "the defendant-official was aware that the policy created an unreasonable risk"; (3) "the defendant was indifferent to that risk"; and (4) "the constitutional injury was caused by the failure to implement the supervisory procedure."[39] That standard mirrors the standard for municipal liability under *Monell*, so a failure to show an unconstitutional policy or custom is fatal to both a supervisory liability claim against supervisory defendants, and to a *Monell* claim that relies on the policymaking authority of the same supervisory defendants.[40]

Policies are made when decisionmakers with "final authority to establish municipal policy"—like the Supervisor Defendants—issue "official proclamation[s], polic[ies], or edict[s]."[41] But "[w]here the policy 'concerns a failure

---

[39] *Id.* (quoting *Sample*, 885 F.2d at 1118).

[40] *See Sample*, 885 F.2d at 1117-18 ("Although the issue here is one of individual liability rather than of the liability of a political subdivision, we are confident that, absent official immunity, the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve. In either case, a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'—whether a natural one or a municipality—has exhibited deliberate indifference to the plight of the person deprived." (internal citation and footnote omitted)).

[41] *Mulholland v. Govt. County of Berks, Pa.*, 706 F.3d 227, 237-38 (3d Cir. 2013) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990), *superseded by statute on other grounds*, Pub. L. No. 102-166, 105 Stat. 1072 (1991)). Defendants also argue that Beers' claim against Kovach in his official capacity is duplicative of her *Monell* claim against the County. Defs.' Opp. Br., Doc. 9 at 11. The Court agrees. *See Whaumbush v. City of*

to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact.'"[42]

"Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'"[43] But in certain situations, "the need for training 'can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights' even without a pattern of constitutional violations."[44]

"Additionally, 'the identified deficiency in [municipal entity's] training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation."[45] "Specifically, in a prison suicide case, this means that the plaintiff must:" (1) "identify specific training not provided that could reasonably be expected to prevent

---

*Philadelphia*, 747 F. Supp. 2d 505, 510 n.2 (E.D. Pa. 2010) (dismissing claims against defendants in their official capacity as duplicative of the civil rights claims against the municipality); *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (Munley, J.) (stating that an official capacity suit is "generally merely another way of pleading an action against an entity of which an officer is an agent." (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))). Therefore, the Court will dismiss the official-capacity claim against Kovach with prejudice and the Court will consider any allegations germane to that claim in its assessment of the *Monell* claim against the County in Count II.

[42]  *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999))

[43]  *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[44]  *Id.* (quoting *Canton*, 489 U.S. at 390 n.10).

[45]  *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

the suicide that occurred" and (2) "demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives."[46]

Here, Beers fails to establish any pattern of similar violations. She references other inmates who committed suicide in the County Jail but does not explain when those suicides occurred or whether they occurred under similar circumstances.[47] That does not show a pattern of similar constitutional violations.[48]

With respect to causation, Beers alleges—in a conclusory fashion—that the Supervisor Defendants knew that the County Jail was understaffed and that the staff was not properly trained.[49] She does not specify the deficiencies in training or offer any proposed training options that would have reduced the risk of prison suicides. Her claim is similar to one rejected by my former colleague, the Honorable Freda L. Wolfson, then-Chief Judge of the United States District Court of the District of New Jersey, in *Mullin v. Balicki*.[50]

---

[46]   *Palakovic*, 854 F.3d at 233 (quoting *Colburn* II, 946 F.2d at 1030).
[47]   In fact, the Complaint is devoid of any facts regarding the specific circumstances of Sean's suicide.
[48]   *See Colburn* I, 838 F.2d at 672 (finding sufficient allegations that the plaintiff was the third detainee who committed suicide in the three years before the plaintiff's suicide).
[49]   Beers Opp. Br., Doc. 14 at 6; Compl., Doc. 1 ¶¶ 50-51.
[50]   2019 WL 2315044, (D.N.J. May 31, 2019).

In *Mullin*, the plaintiff argued that the supervisor defendants "knew the policy regarding the level of supervision required for suicide risk inmates, yet failed ensure that this policy was carried out."[51] With respect to the *Sample* test and *Monell* liability, like the plaintiff in *Mullin*, Beers "has neither clearly articulated the precise policy, practice, or custom at issue, nor has she alleged who implemented one."[52] She presents no evidence beyond conclusory or vague allegations. Hiring more officers or training them better are not sufficiently specific policies or practices to serve as predicates to supervisory liability without identifying the specific personal actions or omissions on the part of the supervisory defendant.[53]

Therefore, Beers' claim amounts to an allegation that the Supervisor Defendants are liable because they have authority over the County Jail.[54] Simply presuming Defendants' supervisory authority from their positions is nothing more than a *respondeat superior* claim,[55] which the Supreme Court has consistently rejected as a basis for section 1983 liability.[56] Accordingly, Beers has not

---

[51]   *Id.* at *7.

[52]   *Id.*

[53]   *See Palakovic,* 854 F.3d at 233-34 (reversing district court's order dismissing supervisory liability claim where the plaintiff alleged specific failures in training correctional officers on suicide-prevention, the adverse effects of solitary confinement, and disciplining and managing mentally ill prisoners).

[54]   Compl., Doc. 1 ¶¶ 5-12.

[55]   *Mullin*, 2019 WL 2315044, at *7 ("As in *Parkell* [*v. Danberg*], to presume that the alleged lax monitoring "arose from [the supervisor defendants'] policies merely because of [their] position[s] is to rely on *respondeat superior*." (citing 833 F.3d 313, 331 (3d Cir. 2016)).

[56]   *See, e.g.*, *Rode*, 845 F.2d at 1207.

satisfactorily alleged a constitutional violation, and all Defendants aside from the County are immune.[57]

For similar reasons—namely the lack of any specific allegations regarding an unconstitutional policy or custom—Beers' *Monell* claim in Count II also fails to state a claim. The mere fact that the County Jail was understaffed and the staff poorly trained is not a policy or custom—it is just an unfortunate state of affairs. A *Monell* claim requires a stronger showing than that.[58]

As Beers agrees that Counts III and IV rise and fall with the alleged constitutional violation at the heart of Counts I and II, the Court dismisses them as well. But the Court will grant Beers leave to amend her Complaint.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and Beers' claims are dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[57]  If Hoskin is a County Commissioner or a supervisory correctional officer, then the above analysis applies to him, as well.

[58]  *See Colburn* I, 946 F.2d at 1029 (noting that an allegation that a municipal defendant engages in a "custom of laxity which can be inferred from the defendants' failure to provide adequate supervision" of detainees" is likely factually insufficient).