IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRY BEERS, Administrator of The ESTATE OF SEAN R. BEERS, Deceased, | No. 4:22-CV-01101 |
| | (Chief Judge Brann) |
| Plaintiff, | |
| v. | |
| NORTHUMBERLAND COUNTY, BRUCE KOVACH, Individually SAMUEL J. SCHICCATANO, JOSEPH M. KLEBON, KYMBERLEY L. BEST, and MARY DOE, | |
| Defendants. | |

**MEMORANDUM OPINION**

**JULY 27, 2023**

Sean R. Beers ("Decedent"), the deceased son of Plaintiff Sherry Beers, tragically committed suicide while detained at Northumberland County Jail (the "Jail") in Coal Township, Pennsylvania. Beers has since filed suit on behalf of her son's estate, alleging several civil rights and state-law tort claims against Northumberland County (the "County"), which operates the jail; Bruce Kovach, the Jail's warden; Samuel J. Schiccatano, Joseph M. Klebon and Kymberley L. Best, the County's elected Commissioners;[1] and Mary Doe, an unidentified County

---

[1] The Court will refer to Defendants Kovach, Schiccatano, Klebon, and Best as the "Supervisor Defendants."

correctional officer. Her First Amended Complaint ("FAC") alleges that Defendants' failure to place Decedent on a suicide watch list and appropriately house and monitor him violated his constitutional rights and Pennsylvania state law. Defendants move to dismiss the FAC for failure to state a claim. For the following reasons, the Court grants Defendants' motion.

## I. BACKGROUND

### A. Underlying Facts

Decedent was arrested and incarcerated in the Jail on or about May 12, 2021, on charges of aggravated assault and disorderly conduct.[2] At the time, the Jail was inadequately staffed to monitor detainees with suicidal tendencies.[3] Beers alleges that prior to May 18, 2021, Decedent was determined to be at risk of suicide but does not explain who made that determination or how they made it.[4] Beers also alleges that other detainees and inmates at the Jail committed suicide in the past using their bedsheets as ligatures but does not identify precisely when these prior suicides occurred.[5] But on May 18, 2021, Decedent appeared before the Honorable John Gembic for a preliminary hearing wearing a suicide protection suit.[6]

---

[2] FAC, Doc. 17 ¶¶ 14-15.
[3] *Id.* ¶¶ 22-23.
[4] *Id.* ¶ 16.
[5] *Id.* ¶ 34.
[6] *Id.* ¶ 17.

Both before and following Decedent's preliminary hearing, he was not placed on the suicide watchlist by the he Jail's employees.[7] On September 15, 2021, Decedent committed suicide in his cell.[8] He was transported by ambulance to a local hospital, where he was pronounced dead.[9] Beers alleges that immediately prior to Decedent's suicide, the area near his cell was staffed by an unidentified female correctional officer who Beers terms "Mary Doe."[10] Doe left Decedent unattended in his cell to "flirt" with another inmate.[11]

### B. Procedural History

Beers alleges that all Defendants violated Decedent's rights under the Eighth and Fourteenth Amendments and are accordingly liable under 42 U.S.C. § 1983 (Count I)[12] and that the County is liable under section 1983 and *Monell v. Department of Social Services of the City of New York* for its failure to adequately staff the Jail and/or train its employees on suicide prevention (Count II)[13]. In addition, Beers brings a state-law wrongful death claim (Count III)[14] and a survival claim (Count IV)[15].

---

[7] *Id.* ¶ 31.
[8] *Id.* ¶ 25.
[9] *Id.* ¶ 24.
[10] *Id.* ¶ 28.
[11] *Id.* ¶ 29.
[12] *Id.* ¶¶ 39-45.
[13] *Id.* ¶¶ 46-51.
[14] *Id.* ¶¶ 52-57.
[15] *Id.* ¶¶ 58-59.

**II.     LAW**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismisses a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Following the Supreme Court's landmark decisions *Bell Atlantic Corp. v. Twombly*[16] and *Ashcroft v. Iqbal*[17], "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they give rise to an entitlement to relief."[19]

---

[16]   550 U.S. 544 (2007).
[17]   556 U.S. 662 (2009).
[18]   *Id.* at 678 (quoting Twombly, 550 U.S. at 570).
[19]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted)

## III. ANALYSIS

### A. Beers Fourteenth Amendment Claim[20]

Count I alleges that Defendants violated the Eighth and Fourteenth Amendments by demonstrating deliberate and reckless indifference to Decedent's medical needs, resulting in Decedent's suicide.[21] Defendants argue that Beers fails to factually allege a constitutional violation, which ultimately dooms her section 1983 and *Monell* claim.[22] They specifically argue that Beers cannot demonstrate any of the individual Defendants' personal involvement in the alleged constitutional violation.[23]

To assert a Fourteenth Amendment claim arising from a jail suicide such as the one raised in Count I, a plaintiff must show that: (1) the decedent had a particular vulnerability to suicide, meaning that there was a "strong likelihood" and not just a "mere possibility" that self-inflicted harm would occur; (2) the custodial officer or officers knew or should have known of the decedent's vulnerability; and (3) those officers acted with reckless or deliberate indifference, meaning something beyond

---

[20] As a pretrial detainee, Decedent's rights are governed by the Fourteenth Amendment rather than the Eighth Amendment, which only applies after an individual has been convicted of an offense. *See Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017) (concluding "that the Due Process Clause of the Fourteenth Amendment provides pretrial detainees at least as much protection for personal security as the level guaranteed to prisoners by the Eighth Amendment."). Additionally, Beers explains that her state-law actions (Counts III and IV) rise and fall with her constitutional claims alleged in Counts I and II. Opp., Doc. 22 at 9. Accordingly, the Court only addresses Counts I and II.
[21] FAC, Doc. 17 ¶¶ 39-45.
[22] *See* MTD Br., Doc. 20 at 5-7.
[23] *See id.* at 7-8.

mere negligence, with respect to the decedent's vulnerability.[24] With respect to the Supervisor Defendants, Beers must meet the standards to impose supervisory liability. To do so, a plaintiff must show that the supervisor "knew or w[as] aware of and disregarded an excessive risk to the plaintiff['s] health or safety" or that the risk was "obvious."[25]

In addition a section 1983 plaintiff must show that individual defendants were personally involved in the constitutional violation.[26] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity."[27]

### 1. Decedent's Vulnerability to Suicide

To establish a particular vulnerability to suicide, a plaintiff must establish that there is a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur."[28] This finding can be supported by a documented history of depression, suicidal or self-harming tendencies, or drug use, as well as prior psychiatric diagnosis or care.[29] However, even when a decedent has a significant history of

---

[24] *Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).
[25] *Palakovic*, 854 F.3d at 225, 225 n.17 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001)).
[26] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).
[27] *Id.*
[28] *Colburn*, 946 F.2d at 1024.
[29] *See Vargo ex rel. Vargo v. Plum Borough*, 376 F. App'x 212, 216, (3d Cir. 2010) (finding no particular vulnerability to suicide when detainee had no history of mental health problems and did not act abnormally or give indication that he would harm himself); *McAndrew v. Northumberland Cnty.*, 2023 WL 408905, at *3 (M.D. Pa. Jan. 25, 2023) (finding that a

suicide attempts, this Court has found that when a significant amount of time has passed without the decedent demonstrating suicidal ideation, the decedent cannot be found to present a particular vulnerability to suicide.[30]

The FAC alleges that Decedent was determined to be a suicidal threat prior to May 18, 2021, and that he attended a preliminary hearing on May 18 wearing a suicide protection suit.[31] Although the FAC does not explicitly connect those two events, the Court presumes that Beers' argument is that Decedent's appearance in a suicide protection suit afforded Defendants sufficient notice that he was a suicide risk. But the FAC does not include any information about the circumstances that led to Decedent being put in a suicide protection suit for the May 18, 2021 hearing and whether Defendants were aware of said circumstances.[32] And although Beers alleges that Defendants failed to place Decedent on the suicide watch list during his incarceration at the Jail, she doesn't allege any facts regarding Decedent's mental

---

detainee going through drug withdrawal had a particular vulnerability to suicide); *Kapa v. Palakovich*, 2011 WL 5520321 (M.D. Pa. Nov. 14, 2011) (concluding that a decedent who had been in and out of psychiatric care at least fifteen times during his incarceration, threatened and attempted self-harm, and told psychiatric staff that he wanted to end his life could be found to have a particular vulnerability); *Finney v. Palakovich*, 2010 WL 2902731, at *4 (M.D. Pa. July 3, 2010) (finding that decedent who had been in and out of psychiatric care nearly every month for 6 months and had harmed himself with a razor had a particular vulnerability to suicide).

[30] *Hinton v. U.S.*, 2015 WL 737584, at *6 (M.D. Pa. Feb. 20, 2015) (finding that decedent with three prior suicide attempts did not have a particular vulnerability to suicide because he did not demonstrate any suicidal ideation for six years after being taken off antidepressant medication).
[31] FAC, Doc. 17 ¶¶ 16-17.
[32] *Id.*

health for the approximately four-month period between the preliminary hearing and his suicide on September 15, 2021.[33]

Accordingly, the only facts that support that Decedent was particularly vulnerable to suicide are: (1) the alleged determination that he was a risk without an identification of who made the determination and (2) and his appearance in a suicide prevention vest. These facts alone do not plausibly allege that there was a "strong likelihood" that Decedent would harm himself. There are no facts suggesting that Decedent had any history of depression, suicide or self-harm attempts, psychiatric care, drug use, or mental illness of any kind prior to his arrest and incarceration or that Decedent presented any such behavior in the four months between his appearance in the suicide vest and his ultimate suicide. Courts have noted that a detainee or inmate's presence in a facility without placement on a suicide watchlist indicates that they were not a suicide risk.[34]

### 2. Defendants' Knowledge of Decedent's Vulnerability to Suicide

A plaintiff must also plead facts that show that the decedent's strong likelihood of suicide was so obvious that a layperson would easily recognize the

---

[33] *Id.* ¶ 31. Although the FAC is silent on this issue, the Court presumes that Decedent was taken back to the Jail following the preliminary hearing.

[34] *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 317 (3d Cir. 2005) (finding that when decedent was not placed on suicide watch supported that defendants did not have knowledge of strong likelihood of self-harm); *McAndrew*, 2023 WL 408905, at *4 ("The Jail's decision to classify Ms. McAndrew as a detainee on suicide watch demonstrates that the Jail administrators who made that decision had subjective knowledge of Ms. McAndrew's particular vulnerability to suicide . . .").

necessity of preventative action.[35] That element of a Fourteenth Amendment suicide-prevention claim dovetails with the general requirement that civil rights plaintiff adequately allege the defendant's personal involvement in the constitutional violation. Essentially, a plaintiff in Beers' shoes must show that the relevant defendant was personally aware of facts indicating the decedent's particular vulnerability to suicide.

Beers again relies on the fact that Decedent was allegedly determined to be a suicide risk and subsequently placed in a suicide protection suit for his court appearance.[36] But Beers fails to allege who initially determined Decedent was a suicide risk prior to May 18, 2021, who put him in a suicide protection suit for his May court appearance, or who saw him in the vest.[37] Presumably, someone who worked for the Jail did. But Beers cannot identify a particular defendant who was aware of these facts. She doesn't allege that Doe was involved in the May 2021 decision regarding Decedent's suicide risk or observed Decedent in a suicide protection suit either before, during, or after the hearing. Nor does she offer a factual explanation of how the Supervisor Defendants might have learned of Decedent's vulnerability.

---

[35] *Colburn*, 946 F.2d at 1025.
[36] FAC, Doc. 17 ¶¶ 16-18.
[37] *Id.*

Therefore, even if the Decedent did demonstrate a particular vulnerability to suicide, the FAC does not sufficiently allege facts that Defendants were aware or should have been aware of it.[38]

**B.   *Monell* Claim**[39]

Beers also brings a *Monell* claim for municipal liability.[40] Defendants contend that no unconstitutional municipal custom or policy exists.[41] Under the *Monell* standard, institutional public defendants like the County cannot be held vicariously liable for the unconstitutional acts of their employees.[42] Rather, they are liable under § 1983 for a policy, practice, or custom that leads to violation of a plaintiff's constitutional rights.[43]

---

[38] The Court's conclusion requires dismissal of Beers' claims against Kovach, who Beers sues in his individual capacity and Doe, whom the Court presumes Beers sues in her individual capacity. As for the Schiccatano, Klebon, and Best, Beers does not identify whether she sues them in their official or personal capacities. In an abundance of caution, the Court will assume both. Therefore, the Court dismisses any personal-capacity claims against Schiccatano, Klebon, and Best. In addition, as the Court concludes that Beers fails to adequately allege a constitutional violation, it need not address the individual Defendants' qualified immunity defense. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (providing that one element of the qualified immunity defense is that the defendant violated a constitutional right).

[39] To the extent that Beers sues Schiccatano, Klebon, and Best in their official capacities, those claims are essentially claims against the County itself, and therefore subject to the same *Monell* standard for institutional liability. *See Monell*, 436 U.S. 658, 690 n.55 (1978) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

[40] In addition, the Court notes that Count II is essentially duplicative of Count I with respect to the County. Count I alleges that all Defendants (including the County) violated Decedent's constitutional rights and are liable under section 1983. That would include Beers' claim against the individual Defendants and her *Monell* claim against the institutional Defendants, which is separately alleged in Count II.

[41] Opp., Doc. 20 at 15.

[42] *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724 (3d Cir. 1989) (citing *Monell*, 436 U.S. at 691).

[43] *See id.*

In addition to alleging the existence of a policy or custom, "[a] plaintiff must also allege that the policy or custom was the 'proximate cause' of [their] injuries."[44] To show such causation a plaintiff may demonstrate an "affirmative link" between the custom and the constitutional violation by showing that the defendant had knowledge of "similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [the plaintiff's] injury."[45]

Beers appears to allege that the County engaged in an unconstitutional custom by failing to "hire and properly train its correctional officers" in "handling inmates with suicide risk"—the "obvious consequence" of which is "Decedent's untimely death."[46] The Court separates Beers' claims into two theories of liability: (1) the County's failure to adequately train its employees and (2) the County's failure to adequately staff the Jail with sufficient employees.

In the failure-to-train context, a plaintiff "must demonstrate that [an institutional defendant's] failure to train its employees 'reflects a deliberate or conscious choice.'"[47] "A plaintiff sufficiently pleads deliberate indifference by

---

[44] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).
[45] *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).
[46] Opp., Doc. 22 at 8. Beers does not appear to allege an unconstitutional policy as there is no reference to "an official proclamation, policy, or [an] edict" in the FAC. *Roman*, 914 F.3d at 798. By contrast, a custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).
[47] *Roman*, 914 F.3d at 798 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).

showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'"[48]

In *Colburn .v Upper Darby Township*, another prison-suicide case, our Court of Appeals explained that, to impose *Monell* liability for a prison suicide for a municipality's failure to train its employees, a plaintiff must:

> (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives.[49]

Beers fails to identify any training that could have been provided to the Jail's employees that would have reduced the risk of Decedent's untimely death.[50] For instance, Beers alleges that Defendants should have known to place Decedent in a suicide prevention cell and failed to periodically monitor him.[51] But the FAC doesn't allege that the County failed to train its employees to take such actions.

---

[48] *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)) (alterations in original).
[49] *Colburn*, 946 F.2d at 1030.
[50] *See id. Colburn* was an appeal of an order granting summary judgment. *Id.* Accordingly, Beers need not have detailed factual allegations of the specific training deficiencies. But the FAC fails to allege any training deficiencies.
[51] *See* FAC, Doc. 17 ¶¶ 20, 26.

In addition, the FAC fails to sufficiently allege the existence of a custom. In these circumstances, a plaintiff can show a custom "where the policymaker has failed to act affirmatively at all, [although] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[52]

Beers does allege that Defendants knew or should have known about prior prison suicides. But that sole allegation is insufficient to show that Defendants acted with deliberate indifference. Beers fails to identify how many suicides took place prior to Decedent's, when they occurred, whether those inmates were on the watchlist, or whether their suicides occurred in a manner similar to the way Decedent took his life.[53] Without that information, Beers cannot show the deliberate indifference necessary for her *Monell* claim.

As for Beers' failure-to-sufficiently-staff theory, the Third Circuit's opinion in *Robinson v. Fair Acres Geriatric Center* appears to foreclose it.[54] There, the court noted that the plaintiff "failed to cite any cases in which *Monell* liability was assessed

---

[52] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).
[53] The FAC alleges that inmates used their bedsheets to attempt and/or commit suicide in the past. FAC, Doc. 17 ¶ 34. Beers doesn't say whether Decedent also used his bedsheets or used a different method.
[54] In addition, this Court's analysis regarding the FAC's failure to allege a custom with respect to Beers' failure-to-train theory applies with equal force to Beers' failure-to-sufficiently-staff theory. She fails to allege any incidents that would have or should have given Defendants notice of the understaffing problem.

based on a municipality's failure to hire a sufficient number of staff" and "failed to sufficiently allege a link between [the defendants'] hiring practices and the injuries she sustained."[55] This Court doubts that the failure to sufficiently staff is an adequate basis for *Monell* liability. But even if it were, Beers fails to allege any incidents that would have or should have given Defendants notice of the understaffing problem. Therefore, there is no unconstitutional custom underlying her *Monell* claim.

In addition, Beers fails to explain how the Jail's lack of staff caused Decedent's suicide, as was the case in *Fair Acres*.[56] She doesn't allege that "staff members were not available or were present too infrequently, for example."[57] She alleges that Doe was responsible for monitoring Decedent and abdicated that responsibility, not that Doe was unable to effectively monitor Decedent because the Jail's staff was spread too thin. Accordingly, Beers fails to state a *Monell* claim. As her state-law claims rise and fall with her constitutional claims, they must be dismissed as well.

---

[55] 722 F. App'x 194 at 199 (3d. Cir. 2018).
[56] *Id.*
[57] *Id.*

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and Beers' claims are dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge